## THE CITY OF CARROLLTON

*v.*

## E. BAZZETTE.

*Filed at Springfield January 17, 1896.*

1. LICENSE—*ordinance which discriminates between persons is void.* An ordinance providing that persons who "temporarily reside in" a municipality must obtain a license before they can sell goods in a certain manner, is invalid, by reason of its discrimination against non-residents.

2. SAME—*when an ordinance against itinerant merchants is valid—inter-State commerce.* An ordinance of a city of Illinois for licensing itinerant merchants is not invalid, as a regulation of inter-State commerce, as applied to one who purchases for re-sale bankrupt stocks in whatever State he can obtain them, when it makes no discrimination between merchants whose goods are imported and those whose goods are not imported, and does not impose any burden on sales in original packages brought into the State.

3. SAME—*what is an "itinerant merchant."* An ordinance requiring itinerant merchants to pay a license fee is not limited to peddlers, but applies to a merchant who takes his stock of goods from city to city, doing business for a few weeks only in each place.

4. SAME—*license of ten dollars per day is burdensome, and void.* A license fee of ten dollars for each day's business carried on by an itinerant merchant, without any discrimination on account of the extent of business or the length of time it may be carried on, is invalid, because unnecessarily burdensome, and in general restraint of trade and prohibitory of the business.

5. COSTS—*city not liable for, in suit to enforce ordinance.* A city is not liable for costs in a suit to enforce an ordinance.

APPEAL from the Circuit Court of Greene county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

W. C. SCANLAND, and THOS. HENSHAW, for appellant:

The amount of the license fee is in the discretion of the power imposing it. *Distillery Co.* v. *Chicago,* 112 Ill. 22.

The reasonableness of the amount of the license fee exacted, where the statute provides that the city may prohibit the business altogether, is not a question for the court to pass upon. *Dennehy* v. *Chicago,* 120 Ill. 627.

The statute provides that the city council in cities, and the president and board of trustees in villages and incorporated towns, shall have the power to license, tax, regulate, suppress or prohibit itinerant merchants and transient vendors of merchandise.   Hurd's Stat. 1893, sec. 62*a*, chap. 24.

The terms "itinerant merchant" and "transient vendor of merchandise," as used in the statute, are defined by the Appellate Court of this State to mean, and were intended to apply to, those persons who, for a short space of time, locate in a city and make sale and delivery of their goods as other merchants do.   *Twining* v. *Elgin*, 38 Ill. App. 361.

A license fee imposed upon persons engaged in a given business, as that of a broker or itinerant merchant, is not in violation of any constitutional provision, when such fees are uniform as to all persons of the same class within the limits of a city.   *Brown* v. *Chicago*, 110 Ill. 186; *Ferry Co.* v. *East St. Louis*, 102 id. 560; 1 Beach on Public Corp. sec. 580.

As soon as the goods are brought into a State and have become a part of its general mass of property, they become taxable in the same manner as other similar property in the same State.   *Brown* v. *Maryland*, 12 Wheat. 419 ; *Brown* v. *Houston*, 114 U. S. 622 ; *Howe Machine Co.* v. *Gage*, 100 id. 676.

A State can enforce her own regulations, even though such regulations should indirectly operate upon commerce outside her immediate jurisdiction.   *Munn* v. *Illinois*, 94 U. S. 113; *Railroad Co.* v. *Iowa*, id. 155; *Peik* v. *Railway Co.* id. 164; *Railway Co.* v. *Ackley*, id. 199; *Railway Co.* v. *Blake*, id. 180; *Stone* v. *Wisconsin*, id. 181.

Henry T. Rainey, for appellee:

Any acts the city council may assume to perform, not fairly within the powers conferred, are *ultra vires*.   *Alton* v. *Insurance Co.* 82 Ill. 47.

Municipal corporations can only exercise such powers expressly given by the State. *Chicago* v. *Rumpff*, 45 Ill. 96.

All acts beyond the scope of the powers granted are void. Dillon on Mun. Corp. sec. 89.

We insist that in this State the rule obtains that no presumptions are to be indulged in favor of the validity of ordinances passed by municipal corporations. This rule is clearly announced in *Schott* v. *People*, 89 Ill. 195, quoted approvingly in Dillon on Mun. Corp. sec. 423.

The powers vested in municipal corporations should, as far as practicable, be exercised by ordinances general in their nature and impartial in their operation. Dillon on Mun. Corp. 322.

To hold that cities have the right to exercise arbitrary discrimination in the matter of granting licenses would be a departure from important fundamental principles which underlie municipal government, as framed under the constitution and laws. *Zanone* v. *Mound City*, 103 Ill. 552.

Ordinances must not arbitrarily discriminate between citizens of the same class. *Braceville* v. *Doherty*, 30 Ill. App. 657; *Zanone* v. *Mound City*, 103 id. 552; *Cairo* v. *Bross*, 101 id. 479.

Any attempt, by color of regulations, to restrain trade is an abuse of power. *Caldwell* v. *Alton*, 33 Ill. 417.

The ordinances of cities, and the statutes authorizing them, must be reasonable, and such as are unequal, vexatious or oppressive are void; and of the same character are all by-laws in restraint of trade, or which unnecessarily tend to create a monopoly. *Chicago* v. *Rumpff*, 45 Ill. 97; *Bloomington* v. *Wahl*, 46 id. 490.

A by-law which is in restraint of trade is void. *Commission Co.* v. *Live Stock Exchange*, 143 Ill. 235.

In this case the license sought to be imposed upon a non-resident auctioneer or upon an itinerant merchant is $10 a day—over $3600 a year. We contend that such an ordinance as this is unreasonable. *Hyde Park* v. *Carton*, 132 Ill. 100; *Wiggins* v. *Chicago*, 68 id. 372.

An unreasonable ordinance is void.    Dillon on Mun. Corp. sec. 327.

Licenses must be reasonable.    *Tugman* v. *Chicago*, 78 Ill. 405; *Railroad Co.* v. *Joliet*, 79 id. 25.

When the subjects of commerce are national in character, and require uniformity of regulation affecting alike all the States, the power of Congress becomes exclusive. *Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Welton* v. *Missouri*, 91 id. 275; *Gilman* v. *Philadelphia*, 70 id. 713; *Brown* v. *Houston*, 114 id. 622.

Inaction by Congress amounts to a declaration that all commerce within its exclusive control shall remain free and untrammeled.    *Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Escanaba Co.* v. *Chicago*, 107 id. 679; *Henderson* v. *Mayer*, 92 id. 259.

Mr. JUSTICE CARTER delivered the opinion of the court:

This appeal is taken from a judgment of the circuit court of Greene county, rendered against appellant for costs, and in bar of its action on a cause brought to that court by appeal from the judgment of a justice of the peace imposing a fine of three dollars and costs on appellee for the violation of an ordinance of the city of Carrollton.    The ordinance provided that any person or corporation making sales of goods, wares, merchandise or other things, except farm or dairy produce, etc., upon the streets or sidewalks of the city, or who should engage in the business of hawker or peddler, or who should temporarily reside therein and vend at auction any goods, wares, merchandise or other thing anywhere in the city, *or engage in the business of itinerant merchant,* without having first obtained a license therefor in accordance with the provisions of the ordinance, should be fined not less than $100.    The ordinance authorized the mayor to revoke any license, in his discretion, on tendering back the unearned license money.    Section 3 established the following schedules of license fees:    "Itinerant merchants,

at retail or auction, $10 per day; foot peddlers and solic-
iting agents, $2 per day; * * * all other cases not
specifically provided for, $2 per day."

Appellee applied for and obtained a license to sell
books, notions, watches, etc., for the period of three
weeks, for which he paid a license fee of $30. The license
provided that it was subject to revocation by the mayor.
Soon after commencing business, appellee began to sell
many different kinds of goods and wares not embraced
within the classes mentioned in the license, both at auc-
tion and in due course of trade at retail. His license was
revoked by the mayor and the license fee tendered back
to him, but he refused to accept it. He was notified by
the mayor that for the business he was then engaged in
he would be required to take out a license as itinerant
merchant, and pay therefor $10 per day. Appellee refused
to procure such license or pay the amount demanded, but
continued to sell as before. Complaint was made under
the ordinance, charging him with temporarily residing in
said city and vending at auction goods, wares and mer-
chandise, and for engaging in the business of itinerant
merchant in said city without a license. A fine of three
dollars and costs was assessed by the justice of the peace.

When the ordinance was offered in evidence on the trial
in the circuit court it was objected to by appellee, on the
ground that both the ordinance, and the statute authoriz-
ing it, approved June 16, 1887, providing that cities, etc.,
"shall have power to license, tax, regulate, suppress or
prohibit itinerant merchants and transient vendors of
merchandise," (Rev. Stat. Meyer's ed. 1895, p. 232,) were
"unconstitutional and void; that they are unreasonable,
in restraint of trade, tend to create monopolies, objec-
tionable as class legislation, and discriminate between
resident and non-resident auctioneers and merchants, and
as applied to the facts in this case are an attempted inter-
ference, by State regulation, with inter-State commerce."
The objection was sustained by the court as to the first

charge in the complaint, and later in the trial, at the close of the evidence, the court sustained the motion of the defendant to exclude the ordinance altogether from the jury and to instruct them to find for the defendant. The jury returned their verdict as instructed, and after overruling appellant's motion for a new trial judgment was rendered against the city for costs.

It was insisted by the defendant that the evidence showed that he was not a resident of this State, and that he was engaged in the purchase of bankrupt stocks of goods in other States and shipping them into this State for sale, and that, as applied to the facts of this case, the ordinance was an attempted regulation of inter-State commerce, and void for that reason also. The evidence showed that the defendant purchased such stocks of goods wherever he could obtain them to the best advantage, and sold them out at retail,—sometimes at auction and sometimes in due course of trade; that for this purpose he opened stores or places of business in different cities and villages, shipping from one to another, usually continuing in business only a few weeks at a time in any one place. Both the ordinance and the license itself provided for the revocation of the license by the mayor, and we are of the opinion that under the evidence there was no abuse of this power by the mayor.

But assuming that the license granted to sell books, notions and watches was properly revoked because the sales of appellee embraced a large class of merchandise not designated in the license, the question arises whether that part of the ordinance which provides that no person shall temporarily reside in said city and vend at auction any goods, wares or merchandise or engage in the business of itinerant merchant in said city without first having obtained a license therefor, and fixing the license fee at $10 per day, was within the power of the city council to pass. Waiving the question that the ordinance as set out seems to confine the license fee of $10 to those coming

within the second class mentioned above,—that is, to itinerant merchants,—we are of the opinion that the city council had no power to make any discrimination between residents and non-residents of the city, or between those temporarily residing in the city and those permanently residing there, in requiring licenses or in the fees to be paid for such licenses. This part of the ordinance confines its operation to those who temporarily reside in the city, and would seem to have no reference to the temporary character or to the permanency of the business. Under the provision in question any one permanently residing in the city could engage in the business mentioned, either temporarily or permanently, without a license, while a temporary resident would in either case be subject to a fine. The city council had no power to make such a discrimination, and that part of the ordinance was properly held to be invalid. (2 Beach on Public Corp. 1235; *Village of Braceville* v. *Doherty,* 30 Ill. App. 645.) But as the provision relating to itinerant merchants had no necessary connection with or dependence upon the first mentioned provision it may be separately enforced, unless found to be also invalid upon other grounds held sufficient in the court below to invalidate it.

The power of the legislature to authorize cities and villages in this State to license and regulate various kinds of business and occupations carried on within their limits, and to require the payment of license fees, has so often been the subject of review and so often sustained by this court that no extended discussion of the general subject will here be attempted. It has been held that such power is inherent in all governments; that, except so far as limited or restrained by the constitution of the State or of the United States, the legislature has such power, as being the repository of all the power of the People not taken from it, and by repeated decisions of this court it has been held that a mere license fee imposed by the municipal authorities under authority of an

act of the legislature is not a tax. (*Chicago Packing Co.* v. *City of Chicago*, 88 Ill. 221; *Wiggins Ferry Co.* v. *City of East St. Louis*, 102 id. 560, and cases there cited.) And since the adoption of the constitution of 1870, containing the provision in section 1 of article 9 that "the General Assembly shall have power to tax peddlers, auctioneers, brokers, bankers, merchants, commission merchants,  *  *  *  in such manner as it shall from time to time direct, by general law uniform as to the class upon which it operates," and sections 9 and 10 of the same article requiring uniformity in taxation as to persons and property, the same view has been maintained, and that these provisions of the constitution have not changed the power of the legislature to authorize municipalities to require and collect such license fees. (*Wiggins Ferry Co.* v. *East St. Louis*, 102 Ill. 560.) In the case cited it was said by Mr. Justice WALKER, in delivering the opinion of the court (p. 567): "The latter words in the first section requiring the tax to be by general law, and uniform as to the class upon which it operates, have no operation upon this case, because this, as shown by the cases cited, is not a tax, but a license. The constitution has not prohibited the General Assembly from imposing or authorizing the imposition of the duty to procure a license to pursue any calling, nor has it limited the power or limited its exercise. In this respect the power of the legislature is the same as it has ever been since the organization of the State government, and no one, we presume, will question the legislative power to require persons engaged in various avocations to procure a license for the purpose, and thus regulate the exercise of an avocation." While in numerous other cases in which it was urged that the license fees exacted were taxes and within the provisions of the constitution above referred to, the question whether the ordinances conformed to those provisions was discussed, the doctrine announced by this court in previous cases has not been departed from. *Howland* v. *City of Chicago*, 108 Ill. 496;

*Timm* v. *Harrison,* 109 id. 593 ; *Braun* v. *City of Chicago,* 110 id. 186 ; *United States Distilling Co.* v. *City of Chicago,* 112 id. 19 ; *Kinsley* v. *City of Chicago,* 124 id. 359.

The ordinance appears to have been framed upon the same theory as other license ordinances, and not upon the theory of levying taxes, in the ordinary acceptation of that term; and if, under the statute in question author-izing cities to "license, tax, regulate, suppress or prohibit itinerant merchants and transient vendors of merchandise," it should be conceded the city of Carrollton had power to tax itinerant merchants, as distinguished from the power to require them to pay a license fee, we are of the opinion that the ordinance was framed under the former and not under the latter power. We shall therefore consider the objections urged against the validity of the ordinance and of the statute under which it was passed, without reference to the provisions of the consti-tution above mentioned relating to taxation.

It is urged with much force that the statute itself is unconstitutional—that the legislature has no power to suppress itinerant merchants or transient vendors of mer-chandise, or to prohibit them from following their avoca-tion; and as applied to the facts of this case, it is insisted that, even regarding the exercise of the power as one to license and regulate, it is in violation of the Federal con-stitution and the legislation of Congress thereunder, as an attempted regulation of inter-State commerce, and to the latter phase of the question the arguments of counsel have been chiefly addressed. We do not think that the latter contention can be sustained. The ordinance makes no discrimination between such merchants whose goods are imported into this State from other States and those whose goods are manufactured or purchased in this State and shipped from place to place for the purpose of sale, nor does it impose any tax upon, or require the payment of any license fee for, the sale in the original package of any articles imported from another State, but the effect

of the ordinance is to impose the burden, not on those engaged in importing goods into the State for sale, nor on the goods as such imports, but upon those who are engaged in the business of selling goods as itinerant merchants after such goods, if imported, have been so acted upon by the importer as that they have become mixed up with the mass of other property in the State. The evidence in this case showed that the goods were purchased at assignees' and other bankrupt sales,—some in this and some in other States,—and that the stock in question was composed of such goods, a part of which had been left unsold and brought from some other city or village in the State where appellee had last carried on his itinerant merchandising. We think it too clear for extended argument that there was no interference with or attempted regulation of commerce between the States in the enforcement of the ordinance in question. This question was discussed and the previous decisions of the Supreme Court of the United States reviewed by Mr. Justice GRAY in *Emert* v. *State of Missouri*, 156 U. S. 296, to which reference may be had for the doctrine of that court on this question.

But was the ordinance void for any of the further reasons urged against it? We do not think it necessary to consider here whether or not the legislature had the power to prohibit, or to authorize municipalities to prohibit, merchants, whether permanent or itinerant, from carrying on the business of merchandising. It must, however, be presumed that it was not intended by the act of 1887 to authorize cities and villages to suppress itinerant merchants, or prohibit them from carrying on their business, unless there should be, in the character of the goods sold or in the manner of conducting the business, something detrimental to the public good, health, morality, comfort or convenience. No such grounds for the suppression or prohibition, as a police regulation, of the business of appellee appeared or was shown; nor can it be said, we think, as a general proposition, that there was

anything in the business in which appellee was engaged
that authorized its suppression by law.   The constitution
provides that "no person shall be deprived of life, liberty
or property without due process of law," and we have
recently held that the right to contract with reference to
one's own labor is a property right, and cannot be taken
away by mere legislative enactment.   (*Ritchie* v. *People*,
155 Ill. 98.)   The right to buy, sell, barter and exchange
property is a necessary incident to its ownership, and,
subject to reasonable regulations, is as much protected
by this provision of the constitution as is the ownership
itself.   The grounds upon which the sale of intoxicating
liquors may be prohibited have no application to the
business of the ordinary merchant.   In *Schwuchow* v. *City
of Chicago*, 68 Ill. 444, it was said that the restraints which
the law applies to the liquor traffic "are not like such as
restrict the ordinary avocations of life, which advance
human happiness or trade and commerce,—that neither
produce immorality, suffering nor want.   This business
is, on principle, within the police power of the State, and
restrictions which may rightfully be imposed upon it
might be obnoxious, as an illegal restraint of trade, when
applied to other pursuits."   Similar views were expressed
in *Dennehy* v. *City of Chicago*, 120 Ill. 627.   In *Launder* v.
*City of Chicago*, 111 Ill. 291, an ordinance requiring licensed
pawnbrokers to make out and deliver to the superintend-
ent of police, every day, a copy, from a book to be kept
by them, of all personal property and other valuable
things received on deposit or purchased during the pre-
ceding day, with a description of the persons from whom
received, was held a reasonable exercise of the police
power for the prevention and detection of crime, and it
was there said the business might be prohibited altogether
under the power conferred on the city.   It was not, how-
ever, put upon the ground that the city might absolutely
suppress a lawful and harmless business, but that the
power might be exercised for the prevention of crime.

We must therefore conclude that it was not the intention of the legislature to authorize municipalities to arbitrarily suppress merchants, or prohibit them from carrying on their business within the corporate limits, on the ground that they are itinerant or transient, instead of permanent, as applied to their business in the municipality. As applied, then, to the case under consideration, we must consider the ordinance as one to license and regulate itinerant merchants, without authorizing the suppression or prohibition of their business.

Appellee contends that he was not an itinerant merchant, within the meaning of the statute and the ordinance. He insists that an itinerant merchant and a peddler mean the same thing. We do not think so. Neither the statute nor the ordinance has furnished any definition. But it cannot be supposed that the legislature would have passed the act in question authorizing the licensing of itinerant merchants and transient vendors of merchandise if the power had already been conferred in the provision in the general Incorporation law relating to peddlers and hawkers. We think the words used very clearly express the meaning of the law-making power, and that they would generally be well understood. The word "merchant" has a well known meaning; but whether a particular trader is a merchant or not, might, under the facts of the particular case, be somewhat difficult to determine. But it cannot be doubted that appellee was a merchant. He opened a store, stocked it with various articles of merchandise and sold as other merchants do, and the only difference, aside from selling sometimes at auction, was, that his business was not permanent in the particular city or village in which, for the time, it was carried on. It was not intended to be permanent—it was intended to be, and was, transitory. He took his stock of goods from city to city, sold his goods and transacted business as a merchant for a few weeks only in each place, and we cannot conceive of a more appropriate des-

ignation, as applied to his case, than that of itinerant merchant. Without finding it at all necessary here to undertake to give any precise definition of the term applicable to other cases that may arise, we hold that appellee was an itinerant merchant.

A different conclusion seems to have been reached by the Supreme Court of Georgia in *Gould* v. *Mayor of Atlanta*, 55 Ga. 678, where it was held that a trader who opened a store and proceeded there to sell out a large stock of goods, and did not convey any of the goods from place to place in the city and sell in that way or by sample, but waited for customers to come to his place of business, was not an itinerant trader, within the meaning of the charter of the city and the laws of that State. But in that case the court defined the terms "itinerant trader" and "peddler" to mean substantially the same thing, as they had theretofore been used in the same sense in the statutes and decisions of that State. But the reasoning there employed cannot control here, and without stopping here to point out further distinctions between the two cases, we must hold that appellee was, within the meaning of our statute, an itinerant merchant. A conclusion similar to the one here arrived at was reached by the Appellate Court for the Second District in the case of *Twining* v. *City of Elgin*, 38 Ill. App. 356.

Holding, then, that the city of Carrollton had the power to license and regulate the business of appellee but not to suppress or prohibit it, the question is presented whether or not the requirement of the payment of a license fee of $10 per day was unreasonable, oppressive and prohibitory in its character, for it must be conceded that if the city had no power to suppress or prohibit directly, it had no power to do so indirectly by the imposition of unreasonable and oppressive burdens. In *Braun* v. *City of Chicago*, 110 Ill. 186, it was said (p. 196): "Nor is the objection well taken that no business can be regulated or burthens imposed on its pursuit unless there

be power to suppress the business. In the case of *Wiggins Ferry Co.* v. *East St. Louis*, 102 Ill. 560, it was held the legislature had power to authorize the city to regulate the ferry and impose a license fee for each boat used by the company, notwithstanding the franchises the company were exercising were granted by charter from the legislature. Yet no one will claim that the legislature could repeal the charter or impair its franchise, or authorize the city to do so. This case was affirmed in the Federal Supreme Court. Until a comparatively recent date our legislature required all merchants of every kind to pay for and procure a license to vend their goods, wares and merchandise, under a penalty. Nor are we aware that the power was ever questioned. And similar laws have been in force in the various States of the Union, from their organization until a recent date, if not till the present time. In the case of *Howland* v. *Chicago*, 108 Ill. 496, it was held that the legislature had power to authorize the city to require a keeper of a livery stable to procure a license for the purpose, under a penalty for failing to do so. Such an occupation is a natural right, as legitimate as is that of either of these appellants." And in *Kinsley* v. *City of Chicago*, 124 Ill. 359, after stating the rule laid down by other authorities that the license fee should be such fee only as will legitimately assist in the regulation, it was said that this court has always applied a more liberal rule of construction in reference to license fees, and that such fees in quite large amounts, and manifestly in part, at least, for revenue, have been sustained. But it has not been held, as supposed by counsel for appellant, that in such cases, where the business may not be prohibited altogether, the amount of the burden to be imposed rests entirely in the discretion of the municipal authorities imposing it.

Counsel for appellant cite *United States Distilling Co.* v. *City of Chicago*, 112 Ill. 19, as supporting their contention in this regard. The license fee required by the city of Chi-

cago for carrying on the business of distiller or brewer was $500 per annum, and this court, following other cases, held that while such a license fee was not a tax, in the constitutional sense of that term, still it might be imposed for substantial revenue, and it was said that, "*observing constitutional restrictions,* the amount would seem to be within the discretion of the body imposing it." The limitation to the discretion of the body imposing the license fee, as expressed in that case, is substantial and important. It is a constitutional limitation. If the constitutional provision that no person shall be deprived of life, liberty or property without due process of law forbids the suppression or prohibition of appellant's business on the sole ground that it is transitory, instead of permanent, in the municipality, then it also forbids its destruction by the imposition of unequal and excessive license fees, prohibitory in their character. A liberal rule in construing grants of power to municipalities in respect to the imposition of license fees has been adopted by this court, but it has never been held that where there is no power to suppress or prohibit they have unlimited discretion in fixing the amount of such fees. In *Wiggins* v. *City of Chicago,* 68 Ill. 372, it was said (p. 377): "The power conferred by the charter to tax, license and regulate auctioneers, authorized the city to adopt any reasonable ordinance for the purpose. The charter points out no particular mode. The city may tax, may license and may regulate the business of auctioneers. The city may not directly prohibit the business, nor can it adopt such unreasonable regulations as would produce such results, or even be oppressive and highly injurious to the business." And a license fee of $200 per annum imposed by ordinance on auctioneers was held not an unreasonable exercise of the power conferred by the charter. (See, also, *Gartside* v. *City of East St. Louis,* 43 Ill. 47.) In the case of *Sipe* v. *Murphy,* 49 Ohio St. 536, somewhat analogous to the case at bar, it was held that the imposition

of a license fee of $25 a day by the city of Columbus for selling any goods, wares, etc., at auction, imported into such city for the purpose of being so sold, was an unreasonable exercise of the power conferred by the statute, although the statute purported to give cities the power "to regulate, license or prohibit" the business, and that the effect of the ordinance was largely to prohibit, under the name of a license, the sale at auction of goods brought into the corporation for that purpose which enter into the daily use and consumption, and which would not be excluded by any police regulation as being detrimental to the public health, comfort and convenience, and that the ordinance was in restraint of trade, and opposed to the public policy of the State. See, also, *Brooks* v. *Vaughn,* 49 N. W. Rep. (Mich.) 633.

Under the liberal rule adopted by this court, such license fees, while imposed under the general police power, may, as we have seen, be imposed not only as a mere means of regulation, but also for revenue.   Under such a rule it becomes a question, not always easy of solution, to determine whether or not the imposition of a certain amount to be paid as a license fee is an oppressive exercise of a statutory power, having the effect, whether so designed or not, to suppress and prohibit the business upon which it is imposed, rather than merely to license and regulate it, and require it to bear its due share of the public burdens.   And it must be admitted that the question, so far as it comes within the discretion of the municipal authorities, is one for them and not for the courts to determine. It is only when the ordinance is plainly unreasonable and prohibitive in its character, where there is no power to prohibit, that the courts may interfere and pronounce it invalid.   (2 Beach on Public Corp. sec. 1234; Cooley's Const. Lim. 200.)   We are, however, of the opinion that the ordinance in question is of that character.   A license fee of $10 for each day, making no discrimination on account of the extent of the business or the length of

time during which it is carried on, would appear to be unnecessarily burdensome in such a case, in general restraint of trade and prohibitory of the business. The business of itinerant merchant would have to be much more remunerative than ordinary merchandising in small cities to survive under a burden of this character, amounting to more than $3000 per annum. We are therefore of opinion that the ordinance is void, and that the learned judge of the circuit court did not err in so holding, and in instructing the jury to find the defendant not guilty. But there was error in rendering judgment against appellant for costs. The city was not liable for costs in such a case. (*Anderson* v. *Schubert*, 158 Ill. 75.) We think this question was correctly decided by the Appellate Court in the following cases: *Town of Nokomis* v. *Harkey*, 31 Ill. App. 107; *City of Petersburg* v. *Whitnack*, 48 id. 663; *Fosselman* v. *City of Springfield*, 38 id. 296.

For the error indicated the judgment is reversed.

*Judgment reversed.*