## Edward Naegle v. City of Centralia.

1. PRACTICE—*Objection to be Made in the Trial Court.*—Where a general objection to the introduction of an ordinance is made in the court below, stating no reasons whatever, it is too late to raise a specific objection in the Appellate Court, which might have been removed if made at the trial.

2.  GOVERNMENTAL POWERS—*Delegation of.*—The general legislative power residing in a State government may delegate to a municipal corporation some portion of its own powers.  But these delegated powers given for local objects are regarded as trusts confided to the hands in which they are placed, and are not subject to be again delegated by the representatives of them.

3.  CITIES AND VILLAGES—*Can Not Delegate the Power to Issue Licenses.*—When a municipal corporation is clothed with authority to issue a license, such authority can not be delegated to others.  So a board of aldermen of a city can not delegate to the mayor a general authority to grant a license, or to fix the amount to be charged for the same.

4.  SAME—*Delegation of Powers.*—A municipal corporation can not delegate to the city treasurer, a discretionary power to fix the amount of a license.

**Prosecution for Violating an Ordinance.**—Trial in the Circuit Court of Marion County; the Hon. TRUMAN E. AMES, Judge, presiding.  Finding and judgment for plaintiff; error by defendant.  Heard in this court at the August term, 1898.  Reversed with a finding of facts.  Opinion filed March 10, 1899.

**Statement of the Case.**—This is a prosecution by the city of Centralia for the violation of sections 2 and 3, of chapter 21, of the ordinances of the city of Centralia.  Plaintiff in error and the Great Atlantic & Pacific Tea Company were made defendants.  There were two suits and judgments rendered against plaintiff in error in both suits before a justice of the peace.  Appeals were taken to the Circuit Court, where the suits were consolidated; jury waived and trial by the court.  Judgment was rendered for $15 against plaintiff in error.  It is this judgment which is before us for review.

Section 2 of said ordinance is as follows:

" That all itinerant merchants and transient venders of merchandise who shall sell, or offer for sale, barter or exchange, any goods, wares or merchandise or other article of value, from house to house in this city, or upon the public streets, avenues or other public grounds of this city, shall pay for a license so to do, not less than $2 nor more than $10 for each day they shall pursue said calling within this city."

The penalty for violating this section is fixed at not less than $5, nor more than $100 for each offense.

Section 3 is as follows:

" Whoever shall temporarily establish or open up a place
of business in this city for the purpose of selling, bartering
or exchanging any goods, wares or merchandise, or other
article of value, being an itinerant merchant, or transient
vender of merchandise, shall pay for a license so to do not
less than $2 nor more than $20 per day for each day he shall
conduct or maintain said business, and whosoever shall vio-
late the provisions of this section shall be subject to a fine
of not less than $10 nor more than $200 for each day he
shall conduct such business without having obtained such
license."

Plaintiff in error, on his behalf, introduced section 1 of
chapter 25 of the ordinances, which is as follows:

" All applications for license shall be made to the mayor,
who shall determine upon and collect the fee for the same.
Upon granting the license, the mayor shall certify the same
to the city clerk, stating the amount received for such
license, the time it is to run, the business for which it is
granted and the particular place where the business for
which it is granted is to be conducted. And the city clerk,
upon the reception of such certificate, shall issue such license
and affix the city seal thereto."

The following propositions of law were submitted by
plaintiff in error, all of which were refused:

" 1.   That the ordinance of the plaintiff is void because
it delegates authority to the mayor of the plaintiff city to
fix the license to be paid by the applicant at his discretion
between two and ten dollars per day.   Refused.

2.   That the ordinance of the plaintiff city in question is
unreasonable and therefore void.   Refused.

3.   That the ordinance in question under which the
defendant was prosecuted is in violation of the Constitution
of the United States and an interference with interstate
commerce.   Refused.

4.   That, under the proof in this case, the defendant
was not within the provisions of the ordinance; that as
agent of the Great Atlantic & Pacific Tea Company, the
defendant was engaged in interstate commerce, and there-
fore did not fall within the provisions of the ordinance
in question and therefore not subject thereto.   Refused.

5.   That under the ordinance in evidence, the mayor of
the plaintiff city was vested with discretionary powers to
fix the license to be paid by applicants, which he might
exercise to the detriment of one applicant in favor of

another, and that such discretionary delegation of power was unwarranted, and therefore the ordinance was unreasonable and void under the law.   Refused."

Plaintiff in error was the only witness examined.   He testified in substance as follows:

"I was in Centralia, June 19, 1897, transacting business by hauling and delivering goods, making collections and taking orders for future delivery.   My method is as follows:   The order is taken from each customer thirty days before the date of delivery of the goods.   The goods are then delivered and the money taken.   Then more orders are taken for the next delivery after thirty days.   If the goods are all right they take them, and if not, they have the privilege of refusing.   I was handling coffees, teas, baking powder, extracts, spices and sugars.   The goods were shipped in original packages from St. Louis to Centralia, in boxes and barrels, to the house we had permanently rented, then loaded into wagons and delivered to customers.   The goods are delivered just as they were taken out of the boxes, from fifty cents to five dollars' worth.   I then see that they are correct as charged to me, and they are then delivered to the customers as ordered. The goods are in boxes and barrels when received at Centralia and are then unpacked and the packages delivered to the customers.   The place we occupied June 19th was owned by Mr. Coffin.   We used it three, four, or five days; since then, rented a warehouse from Mr. Kell.   I employed no clerk.   I am the only one in the employ of the company there.   We carried from ten to fifteen dollars' worth of goods.   Part of the time, in my absence, we had a person there, and if any of the customers made application he acted as my representative.   We did a similar business in eight or ten places, perhaps, in Missouri and Illinois.   The goods which were not taken we stored in the store we rented, and if parties called for them, on payment of amount due, they might have them.   If not called for and we could use them the following month, we did so.   If not, they were returned to St. Louis.   Our method of delivering was, the goods were sorted and put into the wagon, according to the orders, then delivered from house to house.   The price of goods was fixed when the order was taken, except for sugar.   We had the right to name the amount we could sell each customer for fifty cents or for five dollars.   We could not tell the price sugar would be at the time of delivery.   The time between taking orders and delivery was

usually thirty days. It was a matter of convenience to the customers and ourselves. We aimed to deliver so that customers could meet payments; possibly tried to regulate our delivery with reference to pay-days. We paid no taxes. Collected price of goods on delivery. Had no license.

### Cross-examination:

I am defendant in both cases. The Great Atlantic & Pacific Tea Company is my employer. I have no interest except as agent and work for a salary. The principal establishment of the company is in New York. They have several branch offices in St. Louis. When I take orders I keep a memorandum of names and amounts in an order book and the price paid on delivery. The goods are packed and shipped according to the memorandum to the Great Atlantic & Pacific Tea Co. at Centralia. The building rented was used as a wareroom for unpacking the goods. There was no other business done there. Sometimes goods were not delivered. Customers would ask for more time. Sometimes we would leave the goods at the house and call for the money afterward. The goods I spoke of left at the warehouse were on the payment of the money delivered to the parties on orders previously taken. The price of sugar was fixed before shipment. This was our entire mode of doing business in Centralia. We did no business otherwise in Centralia.

### Re-direct Examination:

"The orders were not taken for even amounts of fifty cents or a dollar because the price was not all the same. Names of parties were not always put on the packages and sent out from the house. A certain number of parties would probably order the same amount of goods. These packages were sent out by the house without any names on them. The number of pounds and the price was on the package as ordered. Then I delivered the packages to each of the parties. I don't know when the goods were shipped from St. Louis."

VAN HOOREBEKE & LOUDEN, attorneys for plaintiff in error.

Ordinances may be proven by the certificate of the clerk, under the seal of the corporation. And when printed in book or pamphlet form, and purporting to be published by

authority of the board of trustees or the city council, need not be otherwise published, and such book shall be received as evidence of the passage and legal publication of such ordinance, etc. R. S., S. & C., Sec. 66, Chap. 24.

Ordinance may be proved (1) by the production of the journal of the city council; (2) by the certificate of the city clerk under the corporation seal; (3) by printed book of ordinances purporting to be published by authority of the board of trustees or city council. Lindsay v. City of Chicago, 115 Ill. 120.

Ordinance must be duly proved before a person can be convicted for a violation thereof. Elizabethtown v. Lefler, 23 Ill. 90; Hutchison v. Mt. Vernon, 40 Ill. App. 19.

Ordinance when offered should be accompanied by proof that it was in force at time in question. P. D. & E. R. R. Co. v. Wagner, 18 Ill. App. 598; Flora v. Lee et al., 5 Ill. App. 629.

The municipality can not enact ordinances which are unreasonably oppressive, or such as will create a monopoly. Tugman v. City of Chicago, 78 Ill. 405; City of Lake View v. Tate, 33 Ill. App. 78, 130 Ill. 247; City of Bloomington v. C. & A. R. R., 134 Ill. 460.

The power given to the city council can not be delegated by it. Dillon on Mun. Cor., Vol. I, Sec. 96; Darling v. St. Paul, 19 Minn. 389; Thomson v. Boonville, 61 Mo. 282; Indianapolis v. Lawyer, 38 Ind. 348; Johnson v. Macon, 62 Ga. 645; Macon v. Macon, 5 Ga. 648; Hunt v. Boonville, 65 Mo. 620.

And this principle extends to the levy and collection of taxes, or to determine upon the necessity and character of local improvements. McInerny v. Reed, 23 Iowa, 410; Meuser v. Risdon, 36 Cal. 239; State v. Parker, 26 Vt. 362; State v. Swisher, 17 Tex. 441; Murray v. Tucker, 10 Bush. (Ky.) 240; Davis v. Read, 65 N. Y. 566; Hitchcock v. Galveston, 96 U. S. 345.

Municipal powers shall be executed by the municipality itself, or by such agencies or officers as the statute has pointed out.

So far its functions are legislative; they rest in the discre-

tion and judgment of the municipal body intrusted with them, and that body can not refer the exercise of a power to the discretion and judgment of its subordinates. Cooley on Const. Lim. 204.

Thus a common council charged with the duty of exercising its judgment and discretion in that respect can not delegate to an officer, committee or other person the rights and powers to decide upon the manner of constructing sidewalks, grading or paving streets, or of regulating and licensing hacks, or of regulating wharves, and fixing the rates of wharfage. Meacham on Pub. Officers, Sec. 567.

A city authorized by its charter to erect, repair and regulate wharves and to fix the rate of wharfage, can not lease its wharf or farm out its revenues or empower any one else to fix the rates of wharfage. Matthews v. The City of Alexandria, 68 Mo. 115; City of St. Louis v. Clemens, 43 Mo. 403; City v. Clemens, 52 Mo. 138.

The legislature has the power to delegate the power to license, etc., to a municipality. If the council were to attempt to use the discretion in the way of favoritism, etc., such action would be an abuse of their discretion and could not be sustained. Therefore the discretion to fix the amount in each case as it arises can not be delegated to the city treasurer. Wehrung v. The City of East St. Louis, 46 Ill. 392.

Discretionary power in council can not be delegated to the board of public works. Moore v. City of Chicago, 60 Ill. 243; Foss v. City of Chicago, 56 Ill. 354; Jenks v. City of Chicago, 56 Ill. 397; L. S. & M. S. R. R. v. City of Chicago, 56 Ill. 454; Walker v. City of Chicago, 62 Ill. 286; Board of Sup., etc., v. Brush, 77 Ill. 59.

Where the powers to regulate the calling or business exists, it must be exercised by the corporation, and in the mode prescribed they can not delegate a discretionary power to others or to an individual. Any attempt to do so is unwarranted. City of East St. Louis v. Wehrung, 50 Ill. 28.

The charter provided that the common council shall have power to employ an attorney; the power to employ can not be delegated to the mayor by ordinance or otherwise. City

of East St. Louis v. Thomas, 11 Ill. App. 283; Hickey v. C. & W. I. R. R., 6 Ill. App. 172; Village of Crotty v. The People, 3 Ill. App. 469.

The power to license can not be delegated to the mayor by ordinance. Kinmundy v. Mahan, 72 Ill. 462; Bibel v. The People, 67 Ill. 175; Gillett v. Logan County, 67 Ill. 258.

The power to license does not include a power to prohibit, the business being laudable and legitimate.

Courts adopt a strict, rather than a liberal construction of the powers of corporations. City of Chicago v. Hardy, 66 Ill. App. 524.

In a prosecution for selling goods without a license it should be shown the license was fixed by the city council, and the rate fixed must be reasonable and not left to the discretion of some officer of the corporation.

The council can not delegate the power to fix the amount to others. McRoberts v. City of Sullivan, 67 Ill. App. 435.

Any reasonable doubt concerning the power of a city is to be resolved against the city asserting it. Twining v. Elgin, 38 Ill. App. 356.

John J. Bundy, attorney for defendant in error; W. F. Bundy and Frank F. Noleman, of counsel.

A specific objection to the proof of the passage or publication of an ordinance offered in evidence is waived, if not taken below; a general objection will not avail, as the specific objection might have been cured had it been raised when the evidence was introduced, by the introduction of additional evidence to cure the omission. Booth v. Carthage, 67 Ill. 102; Doyle v. Bradford, 90 Ill. 416; Kanouse v. Lexington, 12 Ill. App. 318; Terre Haute & Ind. R. R. Co. v. Voelker, 129 Ill. 540; Boyer v. Yates City, 47 Ill. App. 117.

The ordinance does not come within the class held void on account of the delegation of powers.

The mayor of cities is a part of the city council. Sec. 1, Art. 3, Chap. 24, R. Stat.

It is his duty to see that all the laws and city ordinances are faithfully executed. Sec. 10, Art. 2, Chap. 24, R. Stat.

The determination of the amount of license fee an applicant shall pay between a maximum and a minimum sum is a ministerial and not a judicial act, hence, such a power as may be performed by the mayor.  Am. and Eng. Ency. Law, Vol. 15, p. 1044.

The employment of agents by a municipal corporation for execution of ministerial duties is necessary and proper, and is not invalid as a delegation of discretionary authority. Brooklyn v. Breslin, 57 N. Y. 591; McClaughry v. Supervisors, 46 Ill. 356.

Where an incorporated town had the power to regulate auction sales, etc., and to pass all ordinances necessary to exercise that power, an ordinance authorizing the mayor to fix the amount of the license within a specified sum was held not to be invalid as delegation of powers.  Decorah v. Dunstan, 38 Iowa, 96.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Plaintiff in error urges error in the admission of Sec. 2 and Sec. 3 of Chap. 21 of the ordinances of Centralia, upon the ground that no proof was made of the passage of the ordinance.  The objection to its introduction was general, stating no reasons whatever.  It is too late now to raise a specific objection, that might have been removed if made at the trial.

As both cases were consolidated and but one judgment rendered, if plaintiff in error was rightfully convicted of violating either Sec. 2 or Sec. 3 of Chap. 21, the judgment must be affirmed.

If not rightfully convicted of violating one or both of said sections, it must be reversed.

The issues in this case involve a question of the validity of the ordinances; and also whether or not the business as conducted by plaintiff in error was a violation of the sections cited, or either of them, if valid.

It is clear that under the evidence there is no violation of Sec. 3 of Chap. 21.  The embracing clause of this section is :

" Whoever shall temporarily establish or open up a

place of business in this city for the purpose of selling, bartering," etc.   The only testimony introduced is that of plaintiff in error, and he testifies:  " The goods were shipped in the original packages from St. Louis to Centralia in boxes and barrels, to the house we had permanently rented, then loaded into wagons and delivered to the customer."

As this statement is uncontradicted, and there is no testimony to indicate that the business as carried on by defendant was a transient and not a permanent business, this section need not be further considered.

This leaves, then, the inquiry only as to the validity of Sec. 2 of Chap. 21, taken in connection with Sec. 3 of Chap. 25; and if valid, as to whether the evidence shows it to have been violated.

Sec. 2 fixes the license at from two dollars to ten dollars per day, thereby giving a discretionary power to some one to determine the amount to be paid; but names no one who shall fix it.   Sec. 3 of Chap. 25 names the person in the following terms:

" All applications for license shall be made to the mayor, who shall determine upon and collect the fee for the same. Upon granting the license, the mayor shall certify the same to the city clerk, stating the amount received for such license, etc.   *   *   *   And the city clerk shall issue such license," etc.

By this section the mayor, and not the council, determines the sum to be paid for a license, subject only to the limitations that it shall be not less than $2 nor more than $10 per day.

The authority of cities and villages to issue licenses is found in Sec. 62 of Article 5, Hurd's Statutes, p. 265: " The city council in cities   *   *   *   shall have the following powers:   *   *   *   To fix the amount, terms and manner of issuing and revoking licenses."   The city council consists of the mayor and aldermen.

" The general legislative power residing in a State government may delegate to a municipal corporation some portion of its own powers.   But these delegated powers given for local objects are regarded as trusts confided to the hands in

which they are placed, and are not subject to be delegated by the representatives of them." Am. & Eng. Ency. of Law, Vol. 15, p. 1043; Dillon on Municipal Corp., Vol. 1, Sec. 96.

This doctrine is fully sustained by decisions of our Supreme Court too numerous to be cited.

" When a municipal corporation is authorized to issue a license, such authority can not be delegated to others. Thus, the board of aldermen of a city can not delegate to a mayor the general authority of the city to grant a license." Am. & Eng. Ency. of Law, Vol. 13, p. 531; Kinmundy v. Mahan, 72 Ill. 462; Darling v. City of St. Paul, 19 Minn. 392. Neither can a municipal corporation delegate to the city treasurer a discretionary power to fix the amount of license. City of East St. Louis v. Wehrung, 46 Ill. 393, 50 Ill. 29, cited in Gillette v. Logan Co., 67 Ill. 258; McRoberts v. City of Sullivan, 67 Ill. App. 436.

If this discretionary power can not be delegated to the city treasurer, by the same reasoning it can not be delegated to the mayor. He is not the city council, and that body alone is authorized " to fix the amount, terms and manner of issuing licenses."

The selling of goods, wares and merchandise from house to house in the city of Centralia, without license, is not an illegitimate business unless made so by a valid ordinance of that city. Under the ordinance in question, the mayor can by license permit one man to sell sugar, coffee, etc., for $2 a day, and require another man selling the same article, at the same prices and at the same places, to pay $10 a day for the same privilege. A license of $10 a day for the conduct of business of the character specified in the ordinance, without regard to the amount of sales, is prohibitory and not permissive.

For the reasons, then, that the council has no power to delegate to the mayor discretion to fix the amount of license; that in the exercise of this discretion gross favoritism and injustice might be practiced; and that a limit of $10 a day allows a prohibitory license to be exacted, the ordinance in ques-

Naegle v. City of Centralia.

tion is unreasonable and void. Carrolton v. Bazzette, 159 Ill. 284; Village of Braceville v. Doherty, 30 Ill. App. 650; City of East St. Louis v. Wehrung, 46 Ill. 393; Tugman v. City of Chicago, 78 Ill. 405; City of Peoria v. Gugenheim, 61 Ill. App. 378; City of Chicago v. Hardy, 66 Ill. App. 524.

The testimony of plaintiff in error is to the effect that the business engaged in was canvassing for orders for sugar, coffee, baking powder, spices, etc., to be delivered in thirty days; that the orders were filled at the branch house of the Great Atlantic & Pacific Tea Co. in St. Louis, and shipped to plaintiff in error, as agent, for delivery; that if not delivered they were stored in the warehouse, and if not disposed of were sent back to the Great Atlantic & Pacific Tea Co. in St. Louis. How long this business had continued, or how long it was intended to be continued, does not expressly appear. For all that the evidence discloses, it may be inferred that the Great Atlantic & Pacific Tea Company proposes to continue business in Centralia, keeping a warehouse there "permanently rented," and by him selling and delivering its goods and making its collections.

Under this evidence, plaintiff in error is an agent of a company doing business in New York, St. Louis, Centralia, and other cities. The fact that the base of supplies is in St. Louis, where the packages are made up, does not bring the defendant within the scope of the ordinance. If orders were taken and the packages made up by plaintiff in error from supplies kept in a warehouse in Centralia, plaintiff in error, so far as the ordinance is concerned, would stand in the same relation as any grocer in that city taking orders and delivering goods. The fact that the packages are made up in St. Louis by the Great Atlantic & Pacific Tea Co., and shipped to the agent at Centralia, does not make him or it an itinerant merchant or a transient vender, and these only are required by the ordinance to take out a license when they sell from house to house.

The propositions numbered one, two and five, asked by plaintiff in error to be held by the court, should not have been refused.

The propositions numbered three and four, not being nec-

essary to be considered for the decision of this case, are not passed upon.    Judgment reversed.

The following statement will be incorporated in the final order:

The city council of Centralia, without authority, delegated to the mayor the discretion of fixing the amount of license at a sum not less than $2 a day and not more than $10 a day.

Plaintiff in error, under the evidence, was not an itinerant merchant, nor a transient vender of merchandise.