## City of Carbondale v. Samuel T. Brush.

1. PUBLIC POLICY—*what contract void as against.* A contract by which a municipality undertakes to give control of litigation to an individual is void as against public policy.

2. COSTS—*who not liable for.* It is error to render a judgment against a city for costs.

Assumpsit. Appeal from the Circuit Court of Jackson County; the Hon. WARREN W. DUNCAN, Judge, presiding. Heard in this court at the August term, 1906. Reversed, with finding of facts. Opinion filed March 15, 1907.

T. B. F. SMITH, City Attorney, and F. M. YOUNGBLOOD, for appellant.

O. A. HARKER and LIGHTFOOT & HARKER, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

This was an action of assumpsit brought by appellee against appellant in the Circuit Court of Jackson county. The pleadings culminated in one special count and the common money counts, a special plea with issue joined thereon, and general issue pleaded to the common counts. The case was tried by the court without a jury and resulted in a finding and judgment in favor of the plaintiff for $1,121.35 and costs of suit. The defendant appealed. Propositions of law were duly submitted to the court and refused. A number of errors have been assigned, but in the conclusions we have reached it will be unnecessary to discuss all of them. In January, 1902, the city of Carbondale began a number of suits against James Wade and other saloon-keepers for selling intoxicating liquor within the city without a license. The saloon-keepers contended that the selling was done under licenses which had been granted some months before, while the city disputed the validity of the licenses claiming that they had been revoked by a vote of the people and action of the city council. Several of the suits were tried in the City Court but no judgment or verdict obtained in any of

City of Carbondale v. Brush.

the cases. It was finally agreed between the city attorney and counsel representing the defendants that a judgment for costs might be rendered against the city in a case in which James Wade was a defendant, from which the city was to appeal to the Circuit Court and there test the validity of the license by which the defendant claimed the right to sell intoxicating liquors. The case was duly appealed and tried at the April term of the Circuit Court and resulted in a judgment against the city. Samuel T. Brush, appellee, went before the city council and urged the city to appeal the Wade case from the Circuit Court to the Appellate Court or that they would permit the city attorney to perfect such an appeal in the name of the city, but the city council were not so inclined. Appellee then proposed that if the city council would permit the appeal to be taken to the Appellate Court he would pay all costs then accrued, all attorney's fees, printing bills, clerk's costs and all expenses that might be incurred, and that the city should be out nothing in the way of costs, attorney's fees and expenses, no matter how the case might be decided in the Appellate Court. Thereupon the city council authorized the city attorney to perfect the appeal from the Circuit Court to the Appellate Court. At the February term, 1904, of the Appellate Court the judgment of the Circuit Court was affirmed. Soon thereafter appellee again appeared before the city council and urged that the case be again appealed and taken from the Appellate to the Supreme Court. To overcome the city's disinclination to the appeal, appellee again engaged to pay all the costs and expenses incident to such appeal whatever the decision of the Supreme Court. Then by a motion carried, the city attorney was authorized to appeal the case to the Supreme Court, which was done. Afterwards, and while the appeal was pending and undetermined in the Supreme Court, it was dismissed by the city attorney pursuant to a resolution and order of the city council passed April 11, 1904.

Appellee contends, and it is the basis of his claim in this case, that in consideration of his promise and engagement to pay the costs and expenses of the appeal to the Supreme

Court the city agreed that he should control the proceedings by appeal. The logic of this contention is, that by the alleged contract, the city delegated to appellee the power to control and continue to and through the Supreme Court a prosecution instituted by and in the name of the city against Wade for the violation of its ordinances. This the council had not the power to do even if so disposed. Such contract, if made, was absolutely void, and could have no binding effect whatever, for, clearly, it was *ultra vires,* and it would be against public policy to enforce it. Every agreement whose tendency is to corrupt, mislead or improperly influence the judgment of a public official in the performance of his duties as such is condemned by the courts. "It is not easy to give a precise definition of public policy. It is perhaps correct to say that public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good which may be designated, as it sometimes has been, the policy of the law or public policy in relation to the administration of the law." 9 Cyc. 481. We do not hold with the contention of appellant that the alleged contract is champertous or that the appellee has offended against the law prohibiting maintenance, but his proposition to the city council embodies elements that would bring the contract very near the border line of both champerty and maintenance. He was not even a resident of Carbondale and therefore could not be personally or individually affected by the city ordinances and had no rightful voice, except as a moralist, in the making or enforcement of ordinances. That appellee was actuated by a worthy motive, that what he did was for the public good, as he believed, and not for any selfish purpose, may be accorded in justification of his activity and zeal in the prosecution of suits in which he had no personal interest or right to be affected, directly or indirectly, so far as appears in evidence. It may fairly be said, without intended reflection upon the motive or purpose of appellee, that he was a volunteer and that what he did in and for the prosecution of these cases, in personal service, or by the payment of

money, was done without hope or expectation of pecuniary recompense or return by the city. To infer otherwise would discredit his profession and motive. And it seems to us, that a reasonable interpretation of all that was said and done prior to and at the time the city council authorized the last appeal, neither the city council nor the appellee understood or contemplated a binding contract by which the city council conferred upon appellee the sole power and authority to control the appeal. It is better to imply that neither intended to make a contract that would be void in law. As we have already said, whether such was the intention of the parties or the effect of the contract proposed, it was contrary to public policy, and even if it had been formally entered into, could not be enforced. There was no agreement by the city expressed or implied to refund the money paid by appellee. It may here be observed that in any event the city was not liable for costs in any of the courts, and the original judgment in the City Court, from which the appeal was taken, might have been challenged for that reason. City of Decatur v. Niedermeyer, 168 Ill., 68; Carrollton v. Bazzette, 159 Ill., 284. As no liability was shown in evidence, the trial court erred in refusing propositions 1 and 2, tendered by appellant, and erred as assigned in the third, fourth, fifth, sixth and seventh assignments made. The judgment will therefore be reversed with a finding of facts.

*Reversed, with finding of facts.*

We find as a fact that the contract alleged in the declaration was contrary to public policy and void and that there was no valid binding agreement expressed or implied as alleged in the declaration.